IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00750-WYD-CBS

PHILIP W. WYERS, et al.
        Plaintiffs,

v.

GREENBERG TRAURIG, LLP et al;
        Defendants.

---

**MOTION TO EXCLUDE EXPERT TESTIMONY OF MELINDA M. HARPER**

---

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. APPLICABLE LEGAL STANDARD.....................................................................2

    A. The Trial Court is a Gatekeeper, Charged with Excluding Unqualified, Unreliable, and Irrelevant Expert Testimony......................................................2

        1. The Witness Must Be Qualified.....................................................................3

        2. The Witness Must be Reliable.......................................................................3

        3. The Testimony Must Be Relevant .................................................................3

III. MS. HARPER'S OPINIONS ................................................................................4

IV. ARGUMENT ......................................................................................................6

    A. Ms. Harper is Not Qualified to Opine on Patent Damages .............................8

    B. Ms. Harper's Royalty Base Is Unreliable .........................................................9

    C. Ms. Harper's Royalty Rate Is Unreliable ........................................................11

    D. Ms. Harper's Opinions Are Neither Relevant nor Helpful..............................14

    E. Ms. Harper's Testimony Has Been Excluded By Other Courts ....................14

V. CONCLUSION...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Brandeis Univ. v. Keebler Co.*,
No. 1:12-cv-01508, 2013 U.S. Dist. LEXIS 18948 (N.D. Ill. Jan. 18, 2013).............. 12

*Daubert v. Merrell Dow Pharms*,
509 U.S. 579 (1993)......................................................................................passim

*De Jager Const., Inc. v. Schleininger*,
938 F. Supp. 446 (W.D. Mich. 1996)........................................................ 14

*General Elec. v. Joiner*,
522 U.S. 136 (1997)........................................................................... 4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................ 12

*In re Beveridge*,
416 B.R. 552 (N.D. Tex. 2009) .............................................................. 15

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)........................................................................ 2, 7

*Miller v. Pfizer, Inc.*,
356 F.3d 1326 (10th Cir. 2004) ............................................................. 2

*Milne v. USA Cycling Inc.*,
575 F.3d 1120 (10th Cir. 2009) ............................................................. 3

*Mitchell v. Gencorp, Inc.*,
165 F.3d 778 (10th Cir. 1999) .............................................................. 3

*Monsanto Co. v. Tidball*,
No. 4:07CV2079, 2009 WL 2757047 (E.D. Mo. Aug. 26, 2009)................................ 8

*NetQuote, Inc. v. Byrd*,
No. 07-cv-00630, 2008 WL 4572528 (D. Colo. Oct. 14, 2008) ................................. 3

*Sorensen v. Shaklee Corp.*,
31 F.3d 638 (8th Cir. 1994) ................................................................. 3

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
346 F.3d 1057 (Fed. Cir. 2003) ................................................................. 8

*Truck Ins. Exchange v. MagneTek, Inc.*,
360 F.3d 1206 (10th Cir. 2004) ...................................................... 3, 7, 13

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ........................................................ 10, 12

*United States v. Gabaldon*,
389 F.3d 1090 (10th Cir. 2004) ................................................................ 4

*Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*,
521 F.3d 790 (7th Cir. 2008) ............................................................... 4, 7

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) .................................................................. 13

*Wing v. Layton*,
No. 2:08-cv-708, 2013 WL 3725267 (D. Utah July 12, 2013) .................................. 14

## BOOKS AND ARTICLES

Weil et al., *Litigation Services Handbook—The Role of the Financial Expert*,
Fourth Edition (2007) ............................................................................ 7

## OTHER AUTHORITIES

Local Civil Rule 7.1(A) .............................................................................. 1

Federal Rule of Evidence 702 ....................................................... 2, 3, 6, 14

Defendants, through counsel, Treece Alfrey Musat P.C. and Steptoe & Johnson LLP, hereby move the Court to exclude the expert testimony of Melinda M. Harper.

Rule 7.1(A) Certification: The undersigned certifies that he has consulted with Plaintiffs' counsel by telephone regarding the relief sought, and that counsel has indicated that Plaintiffs will oppose this motion.

## I.    INTRODUCTION

Plaintiffs Philip Wyers and Wyers Products Group, Inc. (collectively, "Wyers") seek nearly $25 million from defendants for alleged legal malpractice stemming from the Federal Circuit's decision reversing Wyers' $8.6 million jury verdict. Wyers' damages theory is set forth in the report of Melinda M. Harper submitted on May 7, 2013, and the testimony she provided at her October 4, 2013 deposition. As further set forth below, Ms. Harper's opinions are devoid of support, unreliable, and contrary to controlling law.

In reaching her speculative damages figures—which are about seven times the alleged lost settlement opportunity and three times the amount of the jury verdict in the underlying case—Ms. Harper admits she did not review any of Wyers' financial data, never performed a reasonable royalty analysis to properly value Wyers' patents, and relied solely on assumptions communicated to her by Plaintiffs' counsel rather than the underlying documents produced in this case. She performed no independent research to verify the assumptions she applied to her models. Simply put, she has not gathered and analyzed sufficient facts to support her conclusions and opinions—this lack of rigor has caused her testimony to be excluded by at least one other court. As such, her testimony should be excluded as unreliable and irrelevant.

1

## II.   APPLICABLE LEGAL STANDARD

### A.   The Trial Court is a Gatekeeper, Charged with Excluding Unqualified, Unreliable, and Irrelevant Expert Testimony

The Federal Rules of Evidence impose a "gatekeeping" obligation on the trial court to ensure the admissibility of expert testimony at the threshold. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms*, 509 U.S. 579, 597 (1993). Underlying this obligation is the recognition that expert evidence can be "powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595; *see also Miller v. Pfizer, Inc.,* 356 F.3d 1326, 1335 (10th Cir. 2004) ("The analysis outlined in *Daubert* is extensive, requiring the district court to carefully and meticulously review the proffered scientific evidence.") (citations omitted). Thus, the proponent of the testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Daubert,* 509 U.S. at 593 n.10.

To aid the court in its gatekeeper role, Rule 702 defines admissible expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702. Under Rule 702, the trial court must ensure both that the witness is qualified to testify and that the proposed testimony is reliable. *See Kumho*, 526 U.S. at 147 (citing *Daubert*, 509 U.S. at 589).

2

### 1.    The Witness Must Be Qualified

Courts must first determine whether an expert is qualified by knowledge, skill, experience, training, or education to render an opinion. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009).

### 2.    The Witness Must be Reliable

Courts determine reliability by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "[T]he plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.*; *Sorensen v. Shaklee Corp.*, 31 F.3d 638, 649 (8th Cir. 1994) (affirming exclusion of expert who "reasoned from an end result"). Unsupported speculation and subjective belief are insufficient to meet Rule 702's reliability requirement, *see Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781-82 (10th Cir. 1999); courts have consistently excluded experts whose opinions are based on unsupported assumptions. *See Truck*, 360 F.3d at 1213 (affirming ruling striking expert's testimony "based on assumptions and speculation").

### 3.    The Testimony Must Be Relevant

Rule 702 also requires expert testimony to be relevant, *i.e.* "the evidence or testimony [must] assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591; *NetQuote, Inc. v. Byrd*, No. 07-cv-00630, 2008 WL 4572528, *2 (D. Colo. Oct. 14, 2008) ("The touchstone for relevance, in this context, is whether 'the evidence or testimony will assist the trier of fact to understand the evidence

3

or to determine a fact in issue.") (quoting *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004)).

In the end, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. v. Joiner*, 522 U.S. 136, 146 (1997). In other words, the expert's opinion must offer more than a "bottom line." *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791-92 (7th Cir. 2008).

## III. MS. HARPER'S OPINIONS

Melinda Harper proposes to offer testimony regarding Wyers' alleged damages. (Ex. 1, Harper Report at 1). In arriving at her opinions, she was asked by Wyers' counsel to calculate damages based on two scenarios:

> The first scenario assumes that but for the Defendants' negligence, the case against Master Lock would have settled at mediation on October 7, 2009 [for $3,500,000] or shortly thereafter. The second assumes that but for the Defendants' negligence, the appellate court would have upheld the trial court's judgment [of $8,643,135] awarded to Wyers against Master Lock.

(*Id.* at 4-5.)

Ms. Harper's first scenario asserts that Wyers is entitled to $3.5 million in damages relating to a purported mediation settlement offer from Master Lock that Wyers allegedly rejected based on Defendants' advice. Wyers also asserts reasonable royalties of about $8.5 or $11.3 million were lost between Q1 2008 and Q1 2014, amounts which are dependent upon the volume of the purported past and future infringing sales. (Ex. 2 at Schedule 3). Ms. Harper labels these lost reasonable royalty amounts as "Total lost and future royalties," and assumes a damages period from

4

Q12008 to Q12014; therefore, this model reflects both historical royalties (*e.g.*, litigation damages) and future royalties (*e.g.*, license agreements). The "calculation is based on the assumption that the Court would have awarded Wyers the same royalty rate of 24% granted by the trial court on May 28, 2009 against other infringers." (Ex. 1 at 5). Thus, total claimed damages under the first scenario, are between $14.4 and $17.5 million.[1] (Ex. 2 at Schedule 1). Included in the damages amounts claimed, Ms. Harper asserts a prejudgment interest of about $1.5 million on the allegedly lost mediation settlement. *Id.*

Ms. Harper's second scenario asserts that Wyers is entitled to $8.6 million (the amount of the jury verdict overturned on appeal), $88,215 in attorney's fees paid by Wyers to Master Lock, and $8.5 or $11.3 million in lost reasonable royalties from Q1 2008 to Q1 2014. Claimed damages with interest under this scenario are $21 or $24 million. (*Id.* at Schedule 2).

To support her conclusions, Ms. Harper relies solely on assumptions set forth in emails from Wyers' counsel. (Ex. 3 at 50:17-51:2; *see also* Exs. 4-7). In those emails, Wyers' counsel sets forth theories of damages against Defendants and asks Ms. Harper to assume various facts salient to calculating damages to fit those theories. For example, Ms. Harper was told to assume infringing product is sold at the rate of one unit per week for each of the 52 weeks at a sales price of $7.25 in scenarios including 15,000 and 20,000 stores.  (Ex. 1 at 5-6; Exs. 4-7). She was told that the royalty rate to be applied was 24%. (Ex. 1 at 5-6; Ex. 4). Given these assumptions, Ms. Harper

---

[1] Attached as Exhibit 2 are supplemental schedules produced by Ms. Harper at her deposition that reflect correction of math errors present in her original schedules. (Ex. 2, Deposition Exhibit 106). As Ms. Harper noted at her deposition, however, "the substance of the approach hasn't changed." (Ex. 3, 10/4/13 Harper Dep. at 38:3-19).

characterized her work in calculating the damages as "relatively straightforward calculations." (Ex. 3 at 72:15-16).

Ms. Harper performed no independent research to verify the assumptions she applied with respect to the sales price of the product, the number of sales per week, or the number of stores that would distribute Wyers' product. (*Id.* at 88:2-17). She did not review Wyers' historical sales to validate or confirm any of the assumptions she applied. (*Id.* at 88:25-89:2) She did not assess whether the 24% royalty rate she was asked to assume was a reasonable assumption. (*Id.* at 79:12-23). Nor did she evaluate the damages methodology used in the underlying litigation between Wyers and Master Lock or consider applying Master Lock's proposed royalty rate of 2.5% as an alternative calculation. (*Id.* at 79:24-80:4). She did not even know what Master Lock's proposed royalty rate was. (*Id.* at 80:5-7).

Ms. Harper testified that taking assumptions sent to her by counsel and generating an expert report is not "the most common thing that we do," but the approach was taken perhaps due to cost concerns on the part of Wyers. (*Id.* at 51:3-24). Ms. Harper noted that "If I had been asked to do more, I would have been happy to do that, as well." (*Id.* at 52:19-20).

## IV.    ARGUMENT

Ms. Harper impermissibly relies on unsubstantiated and speculative assumptions instead of performing an independent, scientifically sound analysis based on facts which sufficiently satisfy Rule 702's reliability requirements. Ms. Harper offers an unsupported royalty base and an unsupported royalty rate. Ms. Harper also failed to consider basic

scenarios that an expert qualified in providing damages relating to patent infringement would have considered. For example, Ms. Harper failed to consider the probability that the Wyers patents were found not to infringe or were invalidated in subsequent litigations upon which she based her damages calculations. In short, she failed to apply "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

Ms. Harper's opinions in this case amount to nothing more than a mathematical exercise premised on assumptions unsupported in the record and offer nothing more than a "bottom line." *See, e.g., Wendler & Ezra, P.C.*, 521 F.3d at 791-92. She was required to—but did not—establish a nexus between the alleged acts and damages. *See, e.g.*, Weil et al., *Litigation Services Handbook—The Role of the Financial Expert*,Fourth Edition (2007) at 2.1-2.2. The mere understanding or assumption of a nexus, as reflected in Ms. Harper's report, is insufficient. *Truck*, 360 F.3d at 1213. She fails to explain the logic that connects Defendants' alleged wrongful conduct and Wyers' damages or whether Wyers' damages could reasonably be expected to have flowed from Defendants' alleged wrongful conduct. *See, e.g.*, Weil et al., at 2.1-2.2. In order to establish a nexus, at minimum Ms. Harper would need to determine, for example, the probabilities that Wyers would prevail in litigation against the remaining, as yet unnamed alleged infringers, as well as the amount of potentially accused sales (in revenue or units) and the reasonable royalty rate that each jury would award in those litigations. Ms. Harper has not considered any of these data points, but instead, simply assumes that the unsupported representations of Wyers' counsel are accurate, in effect

impermissibly reasoning from an end result. Because Ms. Harper's opinions offer nothing more than a bottom line, she should be excluded from testifying in this case.

### A.     Ms. Harper is Not Qualified to Opine on Patent Damages

Ms. Harper is not qualified to provide testimony regarding patent damages and reasonable royalties. While she testified she is "familiar" with patent damages case law and that she has applied the *Georgia-Pacific* factors in the past, she could not provide any specifics regarding her supposed prior experience in applying the factors or any experience testifying in patent infringement cases. (Ex. 3 at 23:13-24:1; 26:6-27:23; 29:25-31:6). From an examination of her resume, Ms. Harper has little to no experience in providing opinions on patent damages. (Ex. 1 at Attachment II). While she may be experienced in providing damages opinions in legal malpractice cases, to make the leap that she attempts in this case in calculating reasonable royalty damages relating to Wyers' patents runs afoul of the principles set forth in *Daubert*. This lack of qualification is an independent basis for excluding her testimony. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1073 (Fed. Cir. 2003) (affirming district court's decision to exclude the testimony of a damages expert because "he had no experience in placing a value on a patent and did not have any knowledge regarding reasonable royalties for construction-related patents"); *see also Monsanto Co. v. Tidball*, No. 4:07CV2079 CDP, 2009 WL 2757047, at *2 (E.D. Mo. Aug. 26, 2009) (excluding damages expert that was not qualified to opine on damages in patent infringement cases).

**B.    Ms. Harper's Royalty Base Is Unreliable**

The largest portion of Wyers' damages claims result from purportedly lost reasonable royalty damages. (Ex. 2 at Schedule 3). Ms. Harper's two scenarios, set forth above, "include[] separate calculations for the product selling in either 15,000 or 20,000 stores." (Ex. 1 at 5). These calculations are "based on the assumptions that the infringing product is sold at a rate of one unit per week for each of the 52 weeks at a sales price of $7.25." (*Id.*) None of these assumptions is supported in Ms. Harper's report and, as she admitted at her deposition, she did not perform any research to verify the assumptions she applied with respect to the sales price of the product, the number of sales per week, or the number of stores that would distribute Wyers' product. (Ex. 3 at 88:2-17). Had she done so, she would have discovered that Wyers' own history of licensing and litigation contradicts the assumptions she was asked to apply and that her assumptions were unreasonable.

The minimum starting point for a projection of reasonable royalty damages is the identification of accused products and the corresponding infringers making, using, selling or offering those products. These two data points are the foundation of any royalty base, and Ms. Harper admittedly fails to include any analysis or determination of either to estimate her "lost and future royalties." (Ex. 3 at 111:1-7). With minimal effort, Ms. Harper could have discovered that since 2001, Wyers has filed patent infringement suits against several competitors for Trimax receiver and coupler locks including Master Lock, Valley Industries, R.M. Industries, Reese, and Blue Ox. (*See, e.g.,* Ex. 8, *Wyers v.*

*Master Lock* Jury Trial Transcript Volume 4 at 220-221).[2] Yet, although her report cites "two or three other infringers" upon which she forms her royalty base, she did not have any specific infringers in mind when writing her report and did not consider Wyers' past litigations against competitors, the resolutions of these litigations, or the resulting patent licenses. (Ex. 3 at 57:2-5; 62:22-63:1). In fact, her only knowledge of these potential infringers' identities comes from a review of *Defendants'* rebuttal expert report. (*Id.* at 56:20-57:1). Ms. Harper did not know whether Wyers had sued or licensed any of the "two or three other infringers." (*Id.* at 57:10-16). Ms. Harper even ignored evidence of a previous license agreement between Wyers and Master Lock (*id.* at 80:22-81:6) in addition to the undisclosed settlement agreements between Wyers and other accused infringers, contrary to a proper patent damages analysis. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317-18 (Fed. Cir. 2011) ("[R]oyalties paid or received in licenses for the patent in suit or in comparable licenses . . . remain valid and important factors in the determination of a reasonable royalty rate.").

The fact that Master Lock was the dominant company in the market for the subject products further highlights the unreliability of Ms. Harper's royalty base. (Ex 9, GT-0024885). In the underlying case, Wyers was granted an injunction against Master Lock after the jury returned a verdict in favor of Wyers, precluding Master Lock from selling infringing products that were not already in circulation. (May 28, 2009 Judgment for Case No 1:06-cv-00619-LTB-MJW.) Ms. Harper did not account for the possibility

---

[2] *See also* USDC Colo. Cases 04-cv-02262-EWN-CBS (Valley); 11-cv-01940-WJM-CBS (Blue Ox); 11-cv-01919-CMA-CBS (R.M.); 12-cv-02640-REB-KMT (Reese).

that Master Lock would have stopped selling the infringing product so as to not have to pay royalties to Wyers. (Ex. 3 at 61:25-62:7)

Given that Master Lock was out of the market and that many of Wyers' other, smaller, competitors may have been separately licensed to use the patents, the volume of sales found to infringe in the Master Lock case (~3,995,225)[3] from January 2004 to May 2009, is equivalent to 61% or 82% of the total units included in Ms. Harper's royalty base forecast. On an average annual basis, Master Lock sold 738,717 infringing units per year between 2004 and 2009, which, by comparison, is 71% to 95% of the annual units in Wyers' royalty base forecasts. Therefore, Ms. Harper's forecast of infringing units necessarily assumes that the receiver lock market includes unnamed infringing competitors at least as large as Master Lock and it does not include the previously described defendants/licensees in Wyers' separate litigations. In effect, she assumes that other infringers, combined (but excluding Master Lock and other existing licensees), will sell more units than Master Lock, the market leader, whether or not Master Lock remains in the market.  These assumptions are highly speculative, contrary to the evidence, and unreliable. (Ex. 3 at 88:25-89:2).

### C.    Ms. Harper's Royalty Rate Is Unreliable

The next step in projecting reasonable royalty damages is to determine the royalty rate specific to and appropriate for each potential defendant's accused products. Notwithstanding the fact that Ms. Harper's report does not identify any potential

---

[3] Units calculated as $28,965,382 total infringing sales, which include additionally disclosed sales (Ex. 10, GT0035633) divided by an average sales price of $7.25, per Schedule 3 in Ms. Harper's report.

defendants or accused products, the most common and a generally accepted approach for determining a reasonable royalty rate is to consider the anticipated results of hypothetical negotiations of a license between Wyers and accused infringers of the Wyers patents as of the dates of first infringement, including application of the well-established *Georgia-Pacific* ("GP") factors. The hypothetical negotiation attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated a license agreement just before infringement began. The Federal Circuit has "sanctioned the use of the *Georgia-Pacific* factors to frame the reasonable royalty inquiry. Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue." *Uniloc*, 632 F.3d at 1317 (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)).

The GP factors are specific to the parties involved in the hypothetical negotiation, namely the patentee and accused infringer. Contrary to these guidelines, the royalty rate applied to the projected infringing sales in Ms. Harper's report "is based on the assumption that the Court would have awarded Wyers the same royalty of 24% granted by the trial court on May 28, 2009, against other infringers." (Ex. 1 at 5). This approach was specifically rejected in *Brandeis Univ. v. Keebler Co.*, No. 1:12-cv-01508, 2013 U.S. Dist. LEXIS 18948 (N.D. Ill. Jan. 18, 2013). In *Brandeis*, the court excluded expert testimony when the expert applied the same royalty rate regardless of the size of the accused infringer. *Id.* at *30. Ms. Harper has no basis for applying the same royalty rate derived from the judgment against Master Lock to all other potential infringers. (Ex. 3 at 57:2-9; 114:4-16).

12

Further, Ms. Harper did not even assess whether a 24% royalty rate was a reasonable assumption. (*Id.* at 79:12-23). Nor did she evaluate the damages methodology used in the underlying litigation between Wyers and Master Lock or consider applying Master Lock's proposed royalty rate as an alternative calculation. (*Id.* at 79:24-80:4). This is not reliable methodology; it's no methodology at all. The GP factors require consideration of several facts that are unique to the parties.[4]

Ms. Harper testified that she is "familiar" with patent damages case law and that she has applied the *Georgia-Pacific* factors in the past, but she did not apply them in this case. (Ex. 3 at 29:1-3; 29:25-30:10). Her failure to do so, coupled with her attempt to project future reasonable royalties to support Wyers' exorbitant damages claim is manifestly unreliable. *See Whitserve,* 694 F.3d at 31 ("[A] damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers and jurors cannot rely on superficial testimony with no analysis.") (citations omitted). For this and the foregoing reasons, Ms. Harper's opinions and assumptions regarding a royalty rate are unreliable and should be stricken. *See Truck*, 360 F.3d at 1213 (affirming a ruling striking expert's testimony "based on assumptions and speculation").

---

[4] For example, GP factor #2 states that parties should consider the defendant-hypothetical licensee's licensing history for similar patents in formulating the appropriate rate. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 27 n.11 (Fed. Cir. 2012). Similarly, GP factor #5 requires that parties consider "the commercial relationship between [the patentee] and licensee, such as whether they are competitors," GP factor #8 considers the expected and actual profitability of the accused products, and GP factor #11 involves "the extent to which the infringer has used the invention and the value of that use." *Id.*

**D.     Ms. Harper's Opinions Are Neither Relevant nor Helpful**

Rule 702 requires expert testimony to be relevant, i.e. "the evidence or testimony [must] assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591.

Stripped of the unreliable attempts to project damages related to reasonable patent royalties, any calculation of Wyers' alleged damages in this case is a matter of simple mathematics within the ability and province of the jury. Ms. Harper's proffered testimony rests on "what if" scenarios for which she admittedly lacks the facts to support her contentions. Her sole purpose is to offer the court simple mathematical calculations capable of being understood without expert testimony. Specifically, her testimony should be precluded because: (1) her testimony does nothing to assist the trier of fact; (2) is duplicative and cumulative, thus by law it is not relevant to this litigation; and (3) is not reliable because it is based entirely on assumptions. *See*, *e.g.*, *De Jager Const., Inc. v. Schleininger*, 938 F. Supp. 446, 449 (W.D. Mich. 1996) ("It is of limited assistance to a jury for a CPA to do simple mathematical calculations which a reasonable juror or lawyer could perform.").

**E.     Ms. Harper's Testimony Has Been Excluded By Other Courts**

Ms. Harper's reliance on incomplete data has caused her testimony to be excluded before. In *Wing v. Layton*, No. 2:08-cv-708, 2013 WL 3725267 (D. Utah July 12, 2013), like here, Ms. Harper attempted to support a damages opinion with incomplete data that was neither helpful nor reliable. *Id.* at *11 n.7. In excluding Ms. Harper's testimony, the court noted her failure to conduct a review of the relevant

financial and accounting records and her improper use of estimated operating expenses, despite the availability of actual operating costs. *Id.*[5]

Similarly, here, in arriving at her damages opinion Ms. Harper admits she never reviewed Wyers' financial accounting records to support her damages opinion or, for that matter, any other documents other than the email assumptions sent to her by Wyers' counsel.  (Ex. 3 at 50:17-51:2). Moreover, the assumptions she applied are based not on actual underlying data, but on estimations made by Philip Wyers. (Ex. 11, Wyers Dep. at 320:14-321:24). In any event, Ms. Harper admits she did not rely on anything other than the emails provided to her by Wyers' counsel. (Ex. 3 at 63:2-25 ("We didn't accept any information that was just discussed.")).

## V.    CONCLUSION

For the foregoing reasons, Defendants pray that the Court enter an Order excluding the expert testimony of Melinda M. Harper.

---

[5] *See also In re Beveridge*, 416 B.R. 552 (N.D. Tex. 2009). In *Beveridge*, although Ms. Harper's testimony went unchallenged, the court found her analysis to be "questionable in that it was based on assumptions that the court finds unwarranted…." (*Id.* at 574).

November 13, 2013

TREECE ALFREY MUSAT P.C.

/s/  Michael L. Hutchinson
Michael L. Hutchinson
Treece Alfrey Musat P.C.
999 18th Street, Suite 1600
Denver, CO 80202
Telephone: 303-292-2700
Facsimile:  303-295-0414
Email: hutch@tamlegal.com

and

STEPTOE & JOHNSON LLP

/s/ Robert G. Pluta
Meredith Martin Addy
Robert G. Pluta
Houda Morad
Steptoe & Johnson LLP
115 South LaSalle Street
Chicago, IL 60603
Telephone: 312-577-1251
Facsimile:  312-577-1370
Email:  maddy@steptoe.com
          rpluta@steptoe.com
          hmorad@steptoe.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2013, a true and correct copy of the foregoing was filed using the CM/ECF system, which will automatically serve the following via email:

R. Parker Semler, Esq. – parker@semlerlaw.com
Matthew Nelson, Esq. – matt@semlerlaw.com
Andrew Oh-Willeke, Esq. - aowilleke@gmail.com
Semler & Associates, P.C.
1775 Sherman Street, Suite 2015
Denver, Colorado 80203

/s/ Ronda Frazier