

**harperHofer**
& ASSOCIATES, LLC
MEMBER OF FINANCIAL CONSULTING GROUP, L.C.

Matthew Nelson, Esq.
Semler & Associates, P.C.
1775 Sherman Street, Ste. 2015
Denver, CO 80203
Delivered via email: matt@semlerlaw.com

Re: Philip W. Wyers and Wyers Products Group, Inc., Plaintiffs
v.
Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow, Defendants

Dear Mr. Nelson:

You asked us to assist you with your preparation for litigation in the above-referenced proceeding, Case Number 12-cv-00750-WYD-CBS in the United States District Court of Colorado. This report presents our calculation of the damages due to Philip W. Wyers ("Mr. Wyers") and Wyers Products Group ("Wyers Products") (together, "Wyers"). In evaluating these losses, you asked us to assume liability, which we understand is disputed and will be determined at trial. We also understand that discovery is ongoing. We will update our report as appropriate if more information becomes available. You also asked us to be available for rebuttal testimony related to any expert testimony presented by the Defendants.

**PROCEDURES PERFORMED**
The specific procedures performed to date are summarized below.

1. Obtained background data from counsel.
2. Read the documents listed in Attachment I of this report.
3. Analyzed the available information in light of the factual situation.
4. Summarized the findings and conclusions in this report and the related schedules.

**BACKGROUND**
Mr. Wyers is the principal officer of Wyers Products[1], a company that manufactures security products including, among other things, adjustable receiver locks for tow hitches used to secure trailers to motor vehicles. Mr. Wyers held three validly issued patents related to the adjustable receiver locks[2].

---
[1] Per the Amended Complaint and Jury Demand, page 1, filed December 21, 2012
[2] Per the Amended Complaint and Jury Demand, page 2



1580 LINCOLN STREET   SUITE 1100   DENVER, CO 80203   303.486.0000 v   303.486.0001 F   WWW.HARPERHOFER.COM

DEPOSITION EXHIBIT 101

EXHIBIT 1



Mr. Wyers discovered that Master Lock Company ("Master Lock") was infringing his patents by selling adjustable receiver locks with a convertible shank that imitated his patent designs. Wyers brought suit against Master Lock. The action was filed on April 4, 2006 and tried to a jury in March 2009. The Court granted Wyers a judgment as a matter of law on infringement. The jury found in favor of Wyers on their claims and awarded them $5,350,000 in past damages and pre-judgment interest in the amount of $1,137,920[3], which was later increased to a total amount of approximately $8.7 million after Master Lock disclosed additional pre-judgment sales[4]. In addition, the Court granted Wyers' motion for a continuing injunction against Master Lock for future infringement and awarded Wyers a 24% royalty for any infringing products that Master Lock had sold prior to the effective date of the injunction[5].

On June 5, 2009, Master Lock filed a Notice of Appeal to the Court of Appeals for the Federal Circuit (the "CAFC"). After learning of the Notice of Appeal, Mr. Wyers selected Mark L. Hogge ("Mr. Hogge") of Greenberg Traurig to act as counsel for the appeal. Mr. Hogge along with attorneys Laura M. Klaus ("Ms. Klaus") and Robert P. Charrow ("Mr. Charrow"), also of Greenberg Traurig, held themselves out to be patent appellate specialists, which is why Mr. Wyers retained their services[6]. However, Ms. Klaus and Mr. Charrow, who recorded the majority of the attorney time billed to Wyers by Greenberg Traurig for the preparation of the response to Master Lock's appeal, had little or no patent experience at the time Mr. Wyers retained them. This information was never communicated to Mr. Wyers[7].

On August 6, 2009, James Amend, the CAFC's Chief Circuit Mediator, informed Mr. Hogge that the dispute between Wyers and Master Lock would probably be brought into the CAFC's free Mandatory Mediation Program. Mr. Hogge informed Mr. Wyers that there was a 95% chance of winning the appeal[8]. On October 7, 2009, Mr. Hogge and Mr. Charrow attended a mediation conference with Mr. Wyers for the purpose of representing Wyers. At the mediation, counsel for Master Lock offered $3.5 million to Wyers that would have been paid by the end of the year. Later that month, after the mediation concluded, Master Lock made the same $3.5 million settlement offer. Mr. Hogge and Mr. Charrow advised Mr. Wyers not to settle and to

---

[3] Per the Amended Complaint and Jury Demand, page 3
[4] Per the Amended Complaint and Jury Demand, page 4
[5] See footnote 3
[6] See footnote 4
[7] Per the Amended Complaint and Jury Demand, page 5
[8] See footnote 8





terminate all further settlement discussions with Master Lock[9] as the CAFC would be unlikely to overturn the jury's decision[10].

The appeal was decided on the merits in an opinion announced on July 22, 2010. In that opinion, the CAFC ruled in favor of Master Lock and held that upon *de novo* review, the obviousness of the three patents upon which the action was based were invalid and unenforceable. The CAFC vacated the judgment in Wyers' favor and reversed the trial court's prior determination of Master Lock's liability[11]. Wyers timely petitioned the CAFC for panel rehearing and rehearing *en banc*. The petition was denied[12]. Wyers also timely petitioned the U.S. Supreme Court for certiorari review. This petition was also denied and the CAFC order subsequently became final[13].

As a result of Mr. Hogge, Mr. Charrow, and Ms. Klaus's representation, Wyers lost a proposed and attainable settlement with Master Lock, or alternatively, affirmance of the Court's $8.7 million judgment. Additional damages to Wyers as a result of the attorneys' negligence include the loss of the validity of Mr. Wyers' patents, which would not have occurred in the event of a settlement or a favorable appellate ruling. A determination of validity through settlement or judgment would have greatly enhanced the likelihood that Wyers would prevail against two or three other infringers for damages that, collectively, were comparable to those awarded against Master Lock. Finally, the loss of the appeal on the merits denied Wyers future royalties on sales by Master Lock. These additional damages have an economic value in the range of $3 million to $4 million in addition to the lost lump sum settlement, the lost jury verdict, and the attorney fees paid to Greenberg Traurig[14].

In summary, on April 4, 2006, Phil Wyers and Wyers Products sued Master Lock Company for patent infringement in federal court in Denver. On March 11, 2009, the jury entered verdict in favor of Wyers and Wyers Products, awarding them $5,350,000 in past damages.

---

[9] Per the Amended Complaint and Jury Demand, page 6
[10] Per the Amended Complaint and Jury Demand, page 7
[11] Per the Amended Complaint and Jury Demand, pages 10-11
[12] Per the Amended Complaint and Jury Demand, page 20
[13] Per the Amended Complaint and Jury Demand, page 21
[14] See footnote 12





**harperHofer**
& ASSOCIATES, LLC
MEMBER OF FINANCIAL CONSULTING GROUP, L C

On May 28, 2009, Judge Babcock (1) entered judgment on the jury verdict, (2) entered a continuing injunction against Master Lock for future infringement, (3) awarded Wyers a 24% royalty for any infringing products that Master Lock had sold prior to the effective date of the injunction, and (4) awarded pre-judgment interest in the amount of $1,137,920. Master Lock later disclosed additional pretrial sales of infringing products which, by stipulation, increased the total money judgment to $8,643,134.60.

In his May 28, 2009 Judgment, Judge Babcock also awarded Wyers post-judgment interest at the annual rate of 0.47%. Previously, in an Order dated May 12, 2009, he had granted Wyers' Motion for Pre-Judgment Interest, awarding pre-judgment interest on lost royalties at the prime rate published by the Federal Reserve on its official website.

On June 6, 2009, Master Lock filed its Notice of Appeal with the Federal Circuit. Wyers then hired Greenberg Traurig to represent him and his company on appeal. On July 3, 2009, Master Lock posted an $8.5 million *supersedeas* bond in connection with its appeal.

On October 7, 2009, the parties engaged in mediation in the Federal Circuit mediation program. At the mediation, counsel for Master Lock offered Wyers roughly $3.5 million to end the appeal. Later that month, after the mediation concluded, Master Lock made the same $3.5 million settlement offer. The case did not settle and the appeal proceeded.

On July 22, 2010, the Federal Circuit issued its opinion reversing the District Court. Based on the Federal Circuit's decision, on December 3, 2010, District Court then entered Judgment against Wyers on claims against Master Lock for patent infringement.

On January 27, 2011, the District Court assessed costs against Wyers in the amount of $88,214.94. On December 1, 2011, Wyers paid Master Lock the final third of the assessed costs and, on December 15, 2011, Master filed a Notice of Satisfaction of Judgment ending the case.

### APPROACH
We were asked calculate damages based on two different scenarios. The first scenario assumes that but for the Defendants' negligence, the case against Master Lock would have settled at mediation on October 7, 2009 or shortly thereafter. The second assumes that but for the Defendants' negligence, the appellate court would have upheld the trial court's judgment awarded to Wyers against Master Lock.





## ANALYSIS

We were provided with information about the damages from the judgment that the Court entered in the Master Lock case on May 28, 2009 and information adopted by the Court in the Master Lock case in an Order entered on May 12, 2009.

The first scenario assumes that Wyers and Master Lock would have settled for $3,500,000 at or shortly after mediation on October 7, 2009. It is also assumes that Master Lock would have paid the settlement in full on December 1, 2009. We calculated interest on the settlement amount at a rate of 8%, which is compounded on an annual basis, from the assumed payment date through the estimated trial date in this matter of March 31, 2014. We also included the amount of royalties expected to be received each year with the related interest as shown in Schedule 3.

Our determination of damages based on the second scenario was completed in three separate calculations using the information provided and various assumptions. The first calculation is based on the assumption that Wyers received total past damages and prejudgment interest in the amount of $8,643,134.60 on May 28, 2009. We calculated the post-judgment interest for this amount at a rate of 0.47% that was set forth in the judgment, compounded annually, through July 22, 2010, the date the Federal Circuit reversed the District Court. After July 22, 2010, interest on the total money judgment was calculated at a rate of 8%, compounded annually, through the estimated trial date of March 31, 2014.

Our second calculation is based on the assumption that the Court would have awarded Wyers the same royalty rate of 24% granted by the trial court on May 28, 2009 against other infringers. It also assumes that the royalties would have been received from January 1, 2008 through the estimated trial date of March 31, 2014. Finally, it assumes that after March 31, 2014, Wyers would either have the exclusive right to sell the infringing products at a 24% profit margin or to continue to collect a 24% royalty from licensees. For this damages calculation, the 24% royalty method was used for a one year period. The lost royalty calculation is based on the assumptions that the infringing product is sold at a rate of one unit per week for each of the 52 weeks at a sales price of $7.25. The calculation includes separate calculations for the product selling in either 15,000 or 20,000 stores. Per the Order, the interest on the lost royalties is calculated based on the prime rate in effect at the end of each quarter. In addition, interest on the lost royalties is compounded on an annual basis. As shown on Schedule 3, we have calculated the amount of royalties expected to be received each year should counsel choose to argue that damages go beyond the trial date.





Our final calculation is based on the assumption that Wyers would not have been assessed Master Lock's litigation costs. The Defendants' costs in the amount of $88,214.94 were entered against Wyers on January 27, 2011. Wyers paid the judgment in three equal installments on October 1, 2011, November 1, 2011, and December 1, 2011. We calculated the interest for each installment payment at a rate of 8%, compounded annually, through the estimated trial date of March 31, 2014.

## CONCLUSIONS

As a result of performing the procedures and analyses as described above, I have the following opinions based on utilizing the provided assumptions in our damages calculations. See attached schedules for additional details.

First, damages under the first scenario are $15,113,000, rounded, assuming the infringing product is sold in 15,000 stores or $18,163,000, rounded, assuming the product is sold in 20,000 stores.

Second, damages under the second scenario are $21,820,000, rounded, assuming the infringing product is sold in 15,000 stores or $24,870,000, rounded, assuming the product is sold in 20,000 stores.

## OTHER MATTERS

This report may be used only in connection with the matter defined above and is not intended for, and may not be used for other purposes or by anyone not directly involved in this matter. It is based solely upon the information received to date, which is believed to be accurate and reliable. To the extent that additional information becomes available, revisions to this report may be appropriate.

I reserve the right to supplement or modify the opinions upon which I expect to testify, add to the bases and reasons for my opinions and supplement the schedules that I may use at trial for any of the following reasons: (1) in rebuttal, (2) in response to new information, (3) in response to Defendants' discovery responses, including depositions. It is possible that this report will be supplemented if additional information is produced or discovered in response to production requests or via the deposition discovery process or answers to pending interrogatories.

I may use some or all of the documents referenced in this report and the attached Schedules as exhibits. I may also use copies of my resume and required disclosures as exhibits. Further, I reserve the right to use any of the Defendants' materials or documents as exhibits and may use additional documents or material to rebut any testimony of Defendants or Defendants' expert(s).





**harper Hofer**
& ASSOCIATES, LLC
MEMBER OF FINANCIAL CONSULTING GROUP, L.C.

**DISCLOSURES**

In addition to the above referenced schedule, included with this report are Attachments that provide the following information. Attachment I is a listing of all materials considered in preparing this report. Attachment II is my current resume. Attachment III is a listing of all cases for which, within the prior four years, I have given sworn testimony. Attachment IV lists all articles that I have authored and had published in the prior ten years.

My current hourly rate is $365 per hour. All billings are based on hours incurred for analysis, preparation and testimony at trial at our normal and usual hourly rates.

**HARPER HOFER & ASSOCIATES, LLC**

*[signature]*

Melinda M. Harper, CPA/ABV/CFF, CFE

Schedule
Attachments



Philip W. Wyers and Wyers Product Group, Inc.  
v.  
Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow

Schedule 1

## Mediation Settlement Damages
### Scenario 1

**Assumptions Made**
Total Settlement: $ 3,500,000
Post-judgment Interest Rate: 8.00% compounded annually

| | | |
|---|---|---:|
| Total Settlement | 10/01/09 | $ 3,500,000 |
| Annual Interest | | 280,000 |
| Total Settlement Plus Interest | 10/01/10 | 3,780,000 |
| Annual Interest | | 302,400 |
| Total Settlement Plus Interest | 10/01/11 | 4,082,400 |
| Annual Interest | | 326,592 |
| Total Settlement Plus Interest | 10/01/12 | 4,408,992 |
| Annual Interest | | 352,719 |
| Total Settlement Plus Interest | 10/01/13 | 4,761,711 |
| Interest (10/01/13 - 03/31/14) | | 188,774 |

**Total lost settlement damages including interest as of estimated trial date**     03/31/14   $ 4,950,485

| | 15,000 Stores | 20,000 Stores | |
|---|---:|---:|---|
| Total lost settlement damages | $ 4,950,485 | $ 4,950,485 | |
| Total lost and future royalties | 10,162,592 | 13,212,315 | Sch. 3 |
| **Total loss of mediation settlement damages** | **$ 15,113,077** | **$ 18,162,800** | |

Source 1: We received four emails from counsel (two dated May 1, 2013, one dated May 3, 2013, and one dated May 5, 2013) which included the assumptions, rates, and amounts to be used in our calculations. In addition, we were asked to include the total lost and future royalties in this scenario (calculated in Schedule 3).

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Philip W. Wyers and Wyers Product Group, Inc.
v.
Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow

Schedule 2

### Judgment Damages, Including Royalties Awarded and Payment of Assessed Costs
### Scenario 2

|  | 15,000 Stores | 20,000 Stores | |
|---|---|---|---|
| Total Monetary Judgment | $ 11,550,983 | $ 11,550,983 | Sch. 2a |
| Total Lost and Future Royalties | 10,162,592 | 13,212,315 | Sch. 3 |
| Total Judgment Losses | 21,713,575 | 24,763,298 | |
| Plus: Out of Pocket Court Assessed Costs | 106,282 | 106,282 | Sch. 2b |
| **Total Judgment Upheld and Assessed Costs Damages** | **$ 21,819,857** | **$ 24,869,580** | |

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Philip W. Wyers and Wyers Product Group, Inc.
v.
Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow

Schedule 2a

## Judgment Upheld Damages

**Assumptions**

| | | |
|---|---|---|
| Total Monetary Judgment: | $ 8,643,135 | |
| Post-judgment Interest (05/28/09 - 07/22/10): | 0.47% | compounded annually |
| Post-judgment Interest (07/22/10 - 03/31/14): | 8.00% | compounded annually |

| | | |
|---|---:|---:|
| Total Monetary Judgment | 05/28/09 | $ 8,643,135 |
| Annual Interest | | 40,623 |
| Total Monetary Judgment Plus Interest | 05/28/10 | 8,683,757 |
| Interest (05/28/10 - 07/22/10) | | 6,146 |
| Total Monetary Judgment Plus Interest | 07/22/10 | 8,689,903 |
| Annual Interest | | 695,192 |
| Total Monetary Judgment Plus Interest | 07/22/11 | 9,385,095 |
| Annual Interest | | 750,808 |
| Total Monetary Judgment Plus Interest | 07/22/12 | 10,135,903 |
| Annual Interest | | 810,872 |
| Total Monetary Judgment Plus Interest | 07/22/13 | 10,946,775 |
| Interest (07/22/13 - 03/31/14) | | 604,208 |
| | | |
| **Total Monetary Judgment Including Interest** | 03/31/14 | **$ 11,550,983** |

Source 1: We received four emails from counsel (two dated May 1, 2013, one dated May 3, 2013, and one dated May 5, 2013) which included the assumptions, rates, and amounts to be used in our calculations.

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Schedule 2c

Philip W. Wyers and Wyers Product Group, Inc.
v.
Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow

## Costs Assessed Against Wyers

### Assumptions

| | |
|---|---|
| Total Judgment Cost: | $ 88,215 |
| Payment Amount: | $ 29,405 |
| Payment Dates: | 10/01/11, 11/01/11, and 12/01/11 |
| Post-judgment Interest Rate: | 8% compounded annually |

### Payment 1

| | | |
|---|---|---|
| Payment | 10/01/11 | $ 29,405 |
| Annual interest | | 2,352 |
| Payment plus interest | 10/01/12 | 31,757 |
| Annual interest | | 2,541 |
| Payment plus interest | 10/01/13 | 34,298 |
| Interest (10/01/13 - 03/31/14) | | 1,360 |
| **Total payment including interest** | **03/31/14** | **$ 35,658** |

### Payment 2

| | | |
|---|---|---|
| Payment | 11/01/11 | $ 29,405 |
| Annual interest | | 2,352 |
| Payment plus interest | 11/01/12 | 31,757 |
| Annual interest | | 2,541 |
| Payment plus interest | 11/01/13 | 34,298 |
| Interest (11/01/13 - 03/31/14) | | 1,127 |
| **Total payment including interest** | **03/31/14** | **$ 35,425** |

### Payment 3

| | | |
|---|---|---|
| Payment | 12/01/11 | $ 29,405 |
| Annual interest | | 2,352 |
| Payment plus interest | 12/01/12 | 31,757 |
| Annual interest | | 2,540.59 |
| Payment plus interest | 12/01/13 | 34,298 |
| Interest (12/01/13 - 03/31/14) | | 901 |
| **Total payment including interest** | **03/31/14** | **$ 35,199** |

**Total payments including interest $ 106,282**

Source 1: We received four emails from counsel (two dated May 1, 2013, one dated May 3, 2013, and one dated May 5, 2013) which included the assumptions, rates, and amounts to be used in our calculations.

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Philip W. Wyers and Wyers Product Group, Inc.
v.
Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow

Schedule 3

**Royalties Awarded**

| | | |
|---|---|---|
| Number of stores: | 15,000 | 20,000 |
| Sales per quarter per store: | 13 | |
| Sales price per unit: | $7.25 | |
| Royalty: | 24% | |
| Prime rate 03/31/08: | 5.25% | |
| Prime rate 06/30/08: | 5.00% | |
| Prime rate 09/30/08: | 5.00% | |
| Prime rate 12/31/08 forward: | 3.25% | |

| | 15,000 Stores | | | | | | 20,000 Stores | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Sales | Royalty | Cumulative Royalty & Annual Interest | Interest | Cumulative Interest | Cumulative Total Due | Sales | Royalty | Cumulative Royalty | Interest | Cumulative Interest | Cumulative Total Due |
| Q1 2008 | $1,413,750 | $339,300 | $339,300 | $0 | $0 | $339,300 | $1,885,000 | $452,400 | $452,400 | $0 | $0 | $452,400 |
| Q2 2008 | 1,413,750 | 339,300 | 678,600 | 4,453 | 4,453 | 683,053 | 1,885,000 | 452,400 | 904,800 | 5,938 | 5,938 | 910,738 |
| Q3 2008 | 1,413,750 | 339,300 | 1,017,900 | 8,483 | 12,936 | 1,030,836 | 1,885,000 | 452,400 | 1,357,200 | 11,310 | 17,248 | 1,374,448 |
| Q4 2008 | 1,413,750 | 339,300 | 1,357,200 | 12,724 | 25,660 | 1,382,860 | 1,885,000 | 452,400 | 1,809,600 | 16,965 | 34,213 | 1,843,813 |
| Total 2008 | | | | 25,660 | | | | | | 34,213 | | |
| Q1 2009 | 1,413,750 | 339,300 | 1,722,160 | 11,027 | 36,687 | 1,758,846 | 1,885,000 | 452,400 | 2,296,213 | 14,703 | 48,916 | 2,345,129 |
| Q2 2009 | 1,413,750 | 339,300 | 2,061,460 | 13,993 | 50,679 | 2,112,139 | 1,885,000 | 452,400 | 2,748,613 | 18,657 | 67,572 | 2,816,185 |
| Q3 2009 | 1,413,750 | 339,300 | 2,400,760 | 16,749 | 67,429 | 2,468,188 | 1,885,000 | 452,400 | 3,201,013 | 22,332 | 89,905 | 3,290,918 |
| Q4 2009 | 1,413,750 | 339,300 | 2,740,060 | 19,506 | 86,935 | 2,826,994 | 1,885,000 | 452,400 | 3,653,413 | 26,008 | 115,913 | 3,769,326 |
| Total 2009 | | | | 61,275 | | | | | | 81,700 | | |
| Q1 2010 | 1,413,750 | 339,300 | 3,140,635 | 22,263 | 109,198 | 3,249,833 | 1,885,000 | 452,400 | 4,187,513 | 29,684 | 145,597 | 4,333,110 |
| Q2 2010 | 1,413,750 | 339,300 | 3,479,935 | 25,518 | 134,716 | 3,614,650 | 1,885,000 | 452,400 | 4,639,913 | 34,024 | 179,621 | 4,819,534 |
| Q3 2010 | 1,413,750 | 339,300 | 3,819,235 | 28,274 | 162,990 | 3,982,225 | 1,885,000 | 452,400 | 5,092,313 | 37,699 | 217,320 | 5,309,633 |
| Q4 2010 | 1,413,750 | 339,300 | 4,158,535 | 31,031 | 194,021 | 4,352,556 | 1,885,000 | 452,400 | 5,544,713 | 41,375 | 258,695 | 5,803,408 |
| Total 2010 | | | | 107,086 | | | | | | 142,782 | | |
| Q1 2011 | 1,413,750 | 339,300 | 4,604,921 | 33,788 | 227,809 | 4,832,731 | 1,885,000 | 452,400 | 6,139,895 | 45,051 | 303,746 | 6,443,641 |
| Q2 2011 | 1,413,750 | 339,300 | 4,944,221 | 37,415 | 265,224 | 5,209,446 | 1,885,000 | 452,400 | 6,592,295 | 49,887 | 353,632 | 6,945,928 |
| Q3 2011 | 1,413,750 | 339,300 | 5,283,521 | 40,172 | 305,396 | 5,588,917 | 1,885,000 | 452,400 | 7,044,695 | 53,562 | 407,195 | 7,451,890 |
| Q4 2011 | 1,413,750 | 339,300 | 5,622,821 | 42,929 | 348,325 | 5,971,146 | 1,885,000 | 452,400 | 7,497,095 | 57,238 | 464,433 | 7,961,528 |
| Total 2011 | | | | 154,303 | | | | | | 205,738 | | |
| Q1 2012 | 1,413,750 | 339,300 | 6,116,425 | 45,685 | 394,010 | 6,510,435 | 1,885,000 | 452,400 | 8,155,233 | 60,914 | 525,347 | 8,680,580 |
| Q2 2012 | 1,413,750 | 339,300 | 6,455,725 | 49,696 | 443,706 | 6,899,431 | 1,885,000 | 452,400 | 8,607,633 | 66,261 | 591,608 | 9,199,241 |
| Q3 2012 | 1,413,750 | 339,300 | 6,795,025 | 52,453 | 496,159 | 7,291,184 | 1,885,000 | 452,400 | 9,060,033 | 69,937 | 661,545 | 9,721,578 |
| Q4 2012 | 1,413,750 | 339,300 | 7,134,325 | 55,210 | 551,368 | 7,685,693 | 1,885,000 | 452,400 | 9,512,433 | 73,613 | 735,158 | 10,247,591 |
| Total 2012 | | | | 203,044 | | | | | | 270,725 | | |
| Q1 2013 | 1,413,750 | 339,300 | 7,676,668 | 57,966 | 609,335 | 8,286,003 | 1,885,000 | 452,400 | 10,235,558 | 77,289 | 812,447 | 11,048,004 |
| Q2 2013 | 1,413,750 | 339,300 | 8,015,968 | 62,373 | 671,708 | 8,687,676 | 1,885,000 | 452,400 | 10,687,958 | 83,164 | 895,610 | 11,583,568 |
| Q3 2013 | 1,413,750 | 339,300 | 8,355,268 | 65,130 | 736,838 | 9,092,106 | 1,885,000 | 452,400 | 11,140,358 | 86,840 | 982,450 | 12,122,808 |
| Q4 2013 | 1,413,750 | 339,300 | 8,694,568 | 67,887 | 804,724 | 9,499,293 | 1,885,000 | 452,400 | 11,592,758 | 90,515 | 1,072,965 | 12,665,723 |
| Total 2013 | | | | 253,356 | | | | | | 337,807 | | |
| Q1 2014 | 1,413,750 | 339,300 | 9,287,224 | 70,643 | 875,367 | 10,162,592 | 1,885,000 | 452,400 | 12,045,158 | 94,191 | 1,167,157 | 13,212,315 |
| Total lost and future royalties Including interest | | | | | | $10,162,592 | | | | | | $13,212,315 |

| | 15,000 Stores | 20,000 Stores |
|---|---|---|
| Total royalties | $8,482,500 | $11,310,000 |
| Divided by number of periods | 6.25 | 6.25 |
| Royalties for one year | $1,357,200 | $1,809,600 |

Source 1: We received four emails from counsel (two dated May 1, 2013, one dated May 3, 2013, and one dated May 5, 2013) which included the assumptions, rates, and amounts to be used in our calculations.
Source 2: Prime rates are based on the daily bank prime loan rates as published in the Federal Reserve Statistical Release
Note: For the purposes of this calculation, it is assumed that royalty interest is paid at the end of the quarter following the quarter in which it was earned

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

**Philip W. Wyers and Wyers Product Group, Inc.**  **Attachment 1**
**v.**
**Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow**
**List of Documents Received and Obtained through May 6, 2013**

| Document Name |
| --- |
| Philip W. Wyers and Wyers Product Group, Inc. v. Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow Amended Complaint and Jury Demand, dated December 21, 2012 |
| Email from Philip Wyers to Matt Nelson and Melinda Harper re: Wyers v. Greenberg Traurig, dated May 1, 2013 |
| Email from Matt Nelson to Melinda Harper re: Wyers v. Greenberg Traurig, dated May 1, 2013 |
| Email from Matt Nelson to Melinda Harper re: Interest on Royalties (From Mark Pedigo in Underlying Case), dated May 3, 2013 |
| Email from Matt Nelson to Melinda Harper re: Future Royalties/Profits, dated May 5, 2013 |
| Daily Bank Prime Loan Rates as Published in the Federal Reserve Statistical Release |



Attachment II
**MELINDA M. HARPER, CPA/ABV/CFF, CFE**
harper@HarperHofer.com
(303) 486-0012

## EMPLOYMENT

Harper Hofer & Associates, LLC, 1580 Lincoln Street, Suite 1100, Denver, Colorado 80203. 2004 to present. Founding Member.

CBIZ Accounting, Tax & Advisory Services, Greenwood Village, Colorado. 1988 to 2004. Director, Litigation and Valuation Services.

KPMG Peat Marwick, Denver, Colorado. 1977 to 1988. Senior Manager.

U.S. Natural Resources, Inc., Menlo Park, California. 1973 to 1974. Assistant to Treasurer with responsibility for four bank transfer accounts, cash flow forecast data gathering and accounts payable.

K-T Textiles, Inc., Denver, Colorado. 1968 to 1971. Responsibilities included all accounting, including preliminary financial statements; accounts payable and receivable; inventory controls; sales; and customer relations.

The Bon Marche, Seattle, Washington. 1965 to 1968. Assistant Buyer in Girls' Wear, Department Manager for Sewing Notions and Trimmings.

## EXPERIENCE

Project responsibility has included managing engagements ranging in size from 150 to 10,000 hours, including the completion of all documentation, work papers, and reporting.

Significant engagements include:

- Providing expert testimony and other dispute resolution services, investigatory services, and arbitration and mediation services for situations involving damages, analysis of fraud, business and economic valuations, joint venture and partnership disputes, business divorce, infringement damages and valuations, disciplinary actions relating to misuse of attorneys' trust fund, financial statements, opportunity cost of stay of foreclosure, litigation services standard of care, accounting procedures and practices, etc.



1580 LINCOLN STREET   SUITE 1100   DENVER, CO 80203   303.486.0000 v   303.486.0001 f   WWW.HARPERHOFER.COM



**Page 2**

- Industry experience includes manufacturing, services, distribution, energy, real estate, environmental, retailing, telecommunications, health care, professional services, technology, gaming, and hospitality.

- Managing engagements assisting major banks and their Counsel relating to bankruptcy and reorganization evaluations in connection with non-performing loans.

- Performing due diligence reviews related to potential acquisitions or loans for potential buyers or lenders. Industries involved include oil and gas exploration and production, retail office furniture sales and office design services, pipeline operation and design and refining and transportation of oil and related products.

- Tracking, categorizing and accumulating costs associated with the operation and clean up of a Super Fund site from 1966 until the present.

- Analyzing economic losses relating to personal injury, wrongful death and wrongful termination claims.

- Assessing lost profits claimed in a lender's liability suit against a major savings and loan.

- Providing litigation support and expert testimony in an anti-trust case involving calculations of damages based on investigatory procedures and statistical sampling.

- Managing distributions of a class action settlement fund of $23 million to approximately 200,000 claimants.

- Analyzing impact on results of operations where equipment purchased and installed was alleged to be defective or inappropriately engineered and damages were claimed. For all engagements, analysis included review of impact on overall operations as well as review of the alleged damages.

- Managing audit of federal and Indian oil and gas royalty settlements by an international oil and gas producer.

- Participating in an extensive study related to the feasibility of building a manufacturing facility to utilize a by-product.

- Managing the audit of a large specialty manufacturer and fabricator with multi-state operations.





**Page 3**

- Managing the audit of a small exploration and production company that encompassed all financial records since the company's inception five years earlier.

## EDUCATION

<u>West Virginia University</u>, Morgantown, West Virginia. Degree: Bachelor of Science in Business Administration. Major: Accounting. 1976 to 1977. GPA: 4.0/4.0.

<u>University of Arizona</u>, Tucson, Arizona. 1974 to 1976. GPA: 4.0/4.0. Working toward Bachelor of Science degree with major in Accounting.

<u>Tobe-Coburn School</u>, New York, New York. 1962 to 1965. Certificate with Honors in Merchandising.

<u>Colorado Women's College</u>, Denver, Colorado. 1961 to 1962. GPA: 3.6/4.0. Business courses.

## AWARDS

Elijah Watt Sells Award, Honorable Mention, November 1977 Certified Public Accountant's Uniform Examination, given to 69 candidates for papers considered to be exceptional among the 49,000 candidates.

West Virginia's Annual Merit Award for highest grades at a first sitting of the Certified Public Accountant's Uniform Exams for 1977.

West Virginia University, Dean's List each semester; Secretary, Beta Alpha Psi, West Virginia University accounting honorary.

1992 American Women's Society of CPA's Public Service Award.

1998 Colorado Society of CPAs Public Service Award.

1994 – 2005 Who's Who in Accounting in <u>The Denver Business Journal</u>.

## PROFESSIONAL ACTIVITIES

Licensed CPA in Colorado, 1978. Originally licensed in West Virginia.

Holder of two credentials granted by the American Institute of Certified Public Accountants; the Accredited in Business Valuation (ABV) designation, received in 1998; and the Certified in Financial Forensics (CFF) designation, received in September 2008.

Received Certified Fraud Examiner designation in 1997.





**Page 4**

Member, Colorado Society of CPAs; Member of Professional Conduct Board, 2011-present; Chair of Litigation Support Services Committee, 1985 to 1987; Member of Continuing Education Board, 1987 to 1991; Member of Nominating Committee, 1988 to 1989; Chair of Upward Mobility of Women Committee, 1991 to 1992; Member of Board of Directors, 1992 to 1994.

Member, American Institute of CPAs; Member, Joint Trial Board, 2000 to 2006; Member, Litigation and Dispute Resolution Services Alternate Dispute Resolution Task Force, 1999 to 2001; Member, Nominating Committee, 1997 to 1999; Chair, Executive Committee of Management Consulting Services Division, 1995 to 1998; Member, Strategic Planning Advisory Council, 1996 to 1998; Chair of Litigation and Dispute Resolution Services Subcommittee, 1993 to 1995; Member of Litigation Services Subcommittee, 1990 to 1993; Member Accounting Standards Board/Management Consulting Division Task Force on Standards, 1994 to 1995.

Editorial Adviser, *Journal of Accountancy*, 1994 to 1996.

Author, *PPC's Guide to Litigation Support Services*, 2001 to present.

Charter Member, Panel of Experts, *Dunn on Damages, The Economic Damages Report for Litigators and Experts*, 2011 to present.

**COMMUNITY ACTIVITIES**
Member, Treasurer, The Legal Aid Foundation of Colorado, Inc., 2006 to present.

Member, Board of Directors, The Colorado Health Foundation, 2000 to 2009; Member, Chair, Audit Committee, 2003 to 2009; Member, Chair, Philanthropy Committee, 2000 to 2007.

Member, Board of Governors, HCA-HealthONE LLC; Member, Audit Committee and Finance Committee, 2007 to 2009.

Member, Denver Bar Association, Fee Dispute Committee, 2004 to present.

Member, Hearing Board, Supreme Court, State of Colorado, 2002 to the present.

Board member, Colorado Judicial Institute, 1999 to 2008; Chair, Alternate Dispute Resolution Subcommittee, 1999 to 2001; Treasurer, 2000 to 2004; Member, Event, ADR and Development Committees, 2001 to 2008.

Member, International Women's Forum, 1991 to present.

Founding President, The Alliance of Professional Women, 1984 to 1987; Executive Council, 1984 to 1988; Chair of Membership Committee, 1987 to 1989; Member of Outreach Committee, 1990 to 1991; Member of Board of Directors, 1984 to 1991; Member of Emeritus Board. Recipient of Athena Award for Leadership.





**harperHofer**
& ASSOCIATES, LLC
MEMBER OF FINANCIAL CONSULTING GROUP, L.C

### Page 5

Board and Executive Committee member, Colorado I Have a Dream Foundation, 1989 to 1992; Chair of Friends Committee, 1988 to 1991; Mentor to two youths; Recipient of TEAM award in 1991 for mentoring activities.

Founding member, Colorado Women's Leadership Coalition, 1988; Co-Chair, Executive Committee, 1990 to 1993.

Member, Colorado Bar Association Alternative Dispute Resolution Committee, Colorado Pledge Subcommittee, 1990 to 1993.

Member, Advisory Council, American Arbitration Association, Rocky Mountain Division, 1990 to 2000; Member, Commercial and Large Complex Case Arbitration Panels and Mediation Panel; Chair, Panels Subcommittee, 1992 to 1999.

Member, Advisory Board, dcb Construction Company Inc., 1992 to 1995.

Member, Leadership Denver Alumni Association. Member, Class of 1988.

Board member, Colorado Council on Economic Education, 1987 to 1989.



WWW.HARPERHOFER.COM

Attachment III

**In the Last Four Years, Ms. Harper has given testimony in the following matters:**

| Date | Case No. | Plaintiff/Petitioner/Debtor | Defendant/Respondent/Creditor | Court | Deposition/Hearing |
|---|---|---|---|---|---|
| Jun-09 | 2008 CV 1854 | Cold Coffee America, Inc. | Starbucks Corporation, et al. | Denver District Court | D/H |
| July 2009 Aug 2009 | 05 CV 369 | Roberts Aircraft Company, et al. | Geo-Seis Helicopters, Inc., et al | District Court, Larimer County, Colorado | D/H |
| Sep-09 | 2008CV5041 | Arvada Fire Protection District | Zarlengo Raub, LLP and Timothy J. Raub, CPA | District Court, Jefferson County, Colorado | D |
| April 2010 Aug 2010 | 2008 CV 4712 | Harold D. Luebke, et al. | Jeffrey Modesitt, et al | District Court, Jefferson County, Colorado | D/H |
| May-10 | 08CV4210 | Marion Whilden and Mary Whilden | Kimberly Cline, Elmer Dudden and Colorado Cab Company, L.L.C. | District Court, Jefferson County, Colorado | H |
| Sep-10 | 2010CV5887 | Exelacom, Inc. | James Garcia | Denver District Court | D |
| Sep-10 | 08CV222 | Circle Corporation d/b/a Empire Irrigation | Inline Plastics, Inc. | District Court, Weld County, Colorado | D/H |
| Oct-10 | 2009CV535 | Front Range Barricade, Inc. and Jorge Norman | David Bost, J. Barton Maxwell, The Law Offices of David M. Bost, Employers Mutual Casualty Co., Scottsdale Insurance Co., and LBN Insurance Agency | District Court, Boulder County, Colorado | D |
| Oct 2010 Nov 2010 | 2009CV111 | Destination Hotel Telluride, LLC | Steve Togni; Glenn Zalk; and The Lodge at Mountain Village Owners Association, Inc. | District Court, San Miguel County, Colorado | D/H |
| Nov 2010 Dec 2010 | 08CV2326 | David A. Shore and Hopp & Shore, LLC | Robert J. Hopp | Arapahoe County District Court | D/H |
| Feb 2011 Mar 2011 | 10CV1723 | Peter Culley and Jane Culley, et al | Wolf, Slatkin & Madison, P.C. and Walter Slatkin | District Court, City & County of Denver, Colorado | D/H |
| Apr-11 | 2010-CV-1125 | Kim Conrad | Mario's Concrete, Inc. and Fernando Valadez Macias | District Court, City & County of Denver, Colorado | H |
| May-11 | 10 DR 703 | Abigail Moskow | Lawrence Moskow | Arapahoe County District Court | H |
| June 2011 Aug 2011 | 09cv2863 | Rick Salamaha | Reginald C.W. Bell, M.D., Pete H. Baker, M.D., and Kevin J. Molk, M.D. | Arapahoe County District Court | D/H |
| Aug-11 | 2010CV296 | Quintel-MC, Inc.; and Leslie Buttorff | Lisa Culpepper; Godfrey & Lapuyade, P.C.; and Mastin Law Firm, P.C. | Arapahoe County District Court | D |
| Sept 2011 Dec 2011 | 07 CV 1103 | Optimus Corporation | Eric Starck and Synergetics Incorporated | Larimer County District Court | D/H |
| Sep-11 | 3:10-cv-08083-PHX-NVW | A. Miner Contracting, Inc. | Dana Kepner Company, Inc., et al. | U.S. District Court for the District of Arizona | D |
| Sep-11 | 2010CV7256 | M.B. Anderson, et al. | The Cimarron Hills Fire Protection District; and The Board of Directors of the Cimarron Hills Fire Protection District | El Paso County District Court | D |
| Dec 2011 Jan 2012 | 2010-cv-2174 | Donald A. Jones and Kimarie M. Jones | Air Ambulance Specialists, Inc.; and Emergency Medical Services Corporation | Arapahoe County District Court | D/H |
| Dec-11 | 2:08-cv-0708 | Robert Wing, as Receiver for Vescor Capital Corp., et al. | Christopher D. Layton, et al. | U.S. District Court for the District of Utah, Central Division | D |
| Dec-11 | 2011-cv-4341 | Special District Management Services, Inc. | John Warnick | Jefferson County District Court | H |
| Mar-12 | 2:10-cv-00526-EJL-CWD | The United States of America | Marmon Holdings, Inc. and Marmon Wire & Cable, Inc. | U.S. District Court, District of Idaho | H |
| May-12 | 11-cv-01468-WJM-BNB | SolidFX, LLC | Jeppesen Sanderson, Inc. | U.S. District Court, District of Colorado | D |
| Aug-12 | 11-CV-00426-PAB-CBS | 1781808 Ontario Limited, et al. | American Service Finance Corporation | U.S. District Court, District of Colorado | H |
| Oct-13 | 2010-cv-2174 | Donald A. Jones and Kimarie M. Jones | Air Ambulance Specialists, Inc.; and Emergency Medical Services Corporation | Arapahoe County District Court | H |
| Nov-12 | 11-CV-1468-WJM-BNB | SolidFX, LLC | Jeppesen Sanderson, Inc. | U.S. District Court, District of Colorado | D |
| Dec-12 | DJJ-12W-ENR01-0461 | EPA-U.S. Department of Justice | Marmon Holdings, Inc. and Marmon Wire & Cable, Inc. | United States District Court for the District of Idaho | H |
| Dec-12 | 07 CV 1103 | Optimus Corporation | Eric Starck and Synergetics Incorporated | Larimer County District Court | H |

Attachment IV

**Articles authored or co-authored by Ms. Harper within the last ten years:**

"Emerging Issues in Electronic Discovery - An Alert for Appraisers", published in the July 2007 issue of Business Valuation Update. Author: Melinda M. Harper.

PPC's Guide to Litigation Support Services, published annually.
Authors: Brian P. Brinig, Douglas R. Carmichael, Raymond P. Ladouceur, Jay E. Fishman, William C. Barrett, J. Clifford Griffith, Melinda M. Harper.

"Alter Ego Testing and Piercing the Corporate Veil", published in the Fall 2011 issue of Dunn on Damages. Author: Melinda M. Harper.